IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

CHARLOTTE L. HAZELETT,

Plaintiff,

V. CIVIL ACTION NO. 3:04-0053

R. L. BROWNLEE, Acting Secretary,
Department of the Army,

Defendant.

**FINDINGS AND RECOMMENDATION**

Pending before the Court are plaintiff's motion for summary judgment and defendant's renewed motion for summary judgment. The action involves claims of discrimination on the basis of sex and race and retaliation and is brought by plaintiff, a federal employee, under the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16. The record before the Court establishes the following:

After initially seeking EEO counseling, plaintiff filed an administrative complaint of discrimination in February of 2000 asserting that management had discriminated against her on the basis of race, sex and retaliation when the performance level on an annual evaluation was rated at level 3 and when she was given a "time off" award rather than a cash performance award. She subsequently amended her complaint, adding a claim that supervisors were withholding "higher graded work" from her subsequent to the filing of her complaint of discrimination. Following a fact-

finding conference at which witnesses, including plaintiff and her supervisors, testified, an administrative judge issued a decision in which he concluded that, inter alia, because there were "no material facts at issue" the evidence did not warrant a hearing. In his decision and the judgment order he entered, the administrative judge affirmed the agency's actions, finding that the agency did not discriminate or retaliate against plaintiff. Thereafter, the EEOC Office of Federal Operations affirmed the Department of the Army's implementation of the administrative judge's decision and denied plaintiff's request for reconsideration. Plaintiff then brought suit in this Court.

The plaintiff, Charlotte L. Hazelett, has been employed by the Department of the Army, Corps of Engineers, since 1977 and was during all relevant times an Hydrologic Technician, GS-8, working in the "Water Control Section" under the supervision of Gary Mankin, an Hydraulic Engineer, GS-13.[1] Corps employees are evaluated annually for, inter alia, proficiency in the areas of technical competence, adaptability and initiative, working relationships and communications, and responsibility and dependability. Within each of these categories the ratings are "Excellence," meaning an employee exceeds standards, "Success," when an employee meets standards, "Needs Improvement" and "Fails." "Overall Performance" is rated on a scale of one to five, ranging from ratings of one to three, characterized as "Successful," a rating of four, characterized as "Fair" and a rating of five, characterized as "Unsuccessful." Plaintiff's evaluations were performed by her first-line supervisor, Gary Mankin, and approved by Jerry Webb. In December of 1999, which involved her evaluation for the period from November of 1998 through October of 1999, her "Overall

[1] Mankin is referred to by the parties as plaintiff's "first-line supervisor." Jerry Webb, a Supervisory Hydraulic Engineer, GS-14, is the Chief of the Water Resources Engineering Branch, of which the Water Control Section is a part, and is referred to as plaintiff's "second-line supervisor."

Performance" was rated at three, a "successful" rating,[2] but one which was lower than the previous year when her overall performance was rated at two. The difference apparently resulted from a "Success" rating for adaptability and initiative which the previous year had received a rating of "Excellence." On the day she received her evaluation, December 15, 1999, she submitted a request for review and reconsideration to Jerry Webb, pointing out, inter alia, positive remarks in the evaluation, including a statement that her "performance [was] excellent" in the Technical Competence category[3] and noting under the Working Relationships and Communications categories her service on the Black Employment Program Committee, which encouraged "good working relationships and communications."[4] On January 14, 2000, Webb responded by memorandum to plaintiff's request for review, advising her that, while he supported the original "rating of Level 3 SUCCESS," he was raising her rating to a level two. Reviewing each of the four categories evaluated and responding to statements in her request for reconsideration, he noted that, insofar as "Technical Competence" was concerned, her supervisor, in describing her performance as "Excellent," was following his instructions "to provide positive feedback regarding the contributions

---

[2] Plaintiff received a "Success" rating in each of the four categories.

[3] All of the first-line supervisor's comments, such as the "performance is excellent" comment in relation to the Technical Competence category, are identical in plaintiff's 1998-1999 and her 1997-1998 evaluations, as are the comments of her second-line supervisor. Based on the testimony at the fact-finding conference and the fact that, though plaintiff completed a technical writing course at Marshall University during the 1997-1998 evaluation period, her first-line supervisor noted in the 1998-1999 evaluation that she had "completed a technical writing course," it appears that the comments of supervisors are somewhat perfunctory and may be as much a function of what the computer form brings up from a previous year as they are comments on specific attributes and accomplishments during a current year.

[4] Service on this committee was apparently first noted by plaintiff on the evaluation form for 1998-1999 and was set forth under a listing she made of significant achievements during that period.

of all employees including those with a 'SUCCESS' rating." He conceded, however, "that the choice of words could be misleading," though the "intent was to refer to the performance level observed," i.e., success rather than excellence in plaintiff's case. Nevertheless, Webb raised her rating under this category, explaining that, though he thought the initial rating was appropriate, the concededly misleading characterization of her performance as excellent appeared to justify an excellence rating. As noted, the "Excellence" rating under Technical Competence resulted in raising plaintiff's overall Performance rating to a two. Webb disagreed with plaintiff's assessment of her rating under the category "Adaptability and Initiative," stating that the examples she had provided in her request for review were "not applied to the performance of [her] job duties in Water Control section." With respect to the rating under "Working Relationships and Communications," he stated that the examples she noted were "within the 'meets standards'" and advised her that "service on the Black Employment Committee [was] something that management [had] allowed [her] to do on official time," and that "while it enhance[d] [her] personal experience, it [was] not directly related to job performance." Under the category "Responsibility and Dependability," plaintiff's request for review had noted that she had "proved" her support of district programs, had served on the Occupational Safety and Health Committee and had voluntarily worked weekends and holidays "for credit time, not financial compensation, due to budget restraints since 1997." In Webb's response, he noted that "[a]gain, [her] performance rating [was] based primarily on [her] job performance associated with assigned duties" and that, while management allowed her "to perform assignments outside of [her] normal duties at [her] request or the request of others," the "[p]erformance and involvement with those tasks reduce[d] branch resources available to perform [the Corps'] mission

and increase[d] ... overhead expenditures." Webb added that he would address the issue of credit time "as a separate issue."

This memorandum from Mr. Webb was viewed by plaintiff as threatening and intimidating based on the reference to her service on the Black Employment Program Committee, the characterization of that service as being "not directly related to ... job performance" and the statement that "involvement with those tasks[5] reduces branch resources available to perform our mission and increases our overhead expenditures." Plaintiff characterizes the memorandum as a "smoking gun," asserts that it provides direct evidence of discrimination based on race, and contends that her initial overall performance rating of three and other actions taken by her employer were a consequence of racial discrimination against her based on her service on the Black Employment Program Committee.

In the interim, and prior to the time plaintiff's overall performance rating was raised to a level two, decisions with respect to bonuses or awards to employees of the Water Resources Engineering Branch were made by Mr. Webb after consultation with the section chiefs under him, including Mr. Mankin. A finite amount of money was available for awards, the chiefs of the various sections had discretion as to how the awards would be distributed in their section and grade and performance levels established the maximum amount of money that could be awarded to employees. Ultimately, whether an employee received an award and the amount he or she received was at the discretion of management. The awards were not considered an entitlement. When decisions were made concerning awards in early 2000, after determining amounts for those receiving performance

[5] This reference was to her service on the Communication Action Team, Occupational Safety and Health Committee and Black Employment Program Committee, listed by plaintiff as significant achievements on her evaluation form.

level one and two there was little money left for awards for employees receiving successful level three performance ratings, and the decision was made to award the two employees in Mankin's section receiving a level three performance rating what was called a "time-off award,"[6] which came out of a different fund and was not counted against the amount allocated for award money. Plaintiff and the other employee who had gotten an overall performance level of three received time-off awards. In plaintiff's case, the award had a monetary value of $207.68. Plaintiff's award was not changed after her overall performance rating was raised to a level two, while a male hydrologic technician in her section who had initially received an overall performance level two had received a monetary award of $250.00.

In her listing of significant achievements on the 1998-1999 evaluation report, plaintiff described a letter of appreciation she had received from Ohio University thanking her for furnishing data for the "aquatic laboratory Crappie project." She contends here, and asserted at the administrative level, that, after she filed the administrative complaint of discrimination in this case, the work from Ohio University was withheld from her.

Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of judgment in favor of a moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." It is the moving party who "bears the initial burden of pointing to the absence of a genuine issue of material fact," Temkin v. Frederick County Commissioners, 945 F.2d 716, 718 (4th Cir. 1991); however, the "burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact."

[6] It appears that time-off awards were made in other sections as well.

Id. at 718-19. While the Court must construe the facts "in the light most favorable to the party opposing the motion," United States v. Diebolt, Inc., 369 U.S. 654, 655 (1962), that party "'cannot create a genuine issue of fact through mere speculation or the building of one inference upon another,'" Harleysville Mutual Insurance Company v. Packer, 60 F.3d 1116, 1120 (4th Cir. 1995), and "[t]he mere existence of a scintilla of evidence in support of [a] plaintiff's position will be insufficient; there must be evidence upon which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "At bottom, a district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried, if not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." Thompson Everett, Inc. v. National Cable Advertising, L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). Concluding that in this case there are not such "genuinely disputed facts" and that defendant is entitled to judgment as a matter of law, it is recommended that the Court grant defendant's renewed judgment for summary judgment, deny plaintiff's motion for summary judgment and enter judgment in favor of defendant.

The Court considers initially plaintiff's claims of race and gender discrimination, bearing in mind that the "proper object of inquiry" in evaluating the claims of disparate treatment in this case, whether on the basis of race or gender, "is whether there has been 'discrimination' in respect of 'personnel *actions* affecting [covered] employees,'" Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981), quoting from 42 U.S.C. §2000e-16(a), and that to establish discrimination "in respect of" personnel actions alleged to be discriminatory plaintiff must show, as an element of her claim, that the alleged discriminatory acts "adversely effected 'the terms, conditions, or benefits'" of her employment, characterized as an "adverse employment action." VonGuten v. Maryland, 243 F.3d

858, 865 (4th Cir. 2001).[7] Plaintiff's claim of discrimination based on an overall performance rating of three in her initial evaluation clearly does not involve an adverse employment action. The rating of three, as has been seen, was raised to a level two after she requested reconsideration and was in effect for just over a month. As such, it was clearly an "interlocutory or mediate" decision, Page v. Bolger, supra at 233, having no effect of any significance on terms, conditions or benefits of her employment. As the Court pointed out in Brown v. Brody, 199 F.3d 446, 458 (D.C. Cir. 1999), a "thick body of precedent ... refutes the notion that formal criticism or poor performance evaluations are necessarily adverse actions" when they have no effect on an employee's grade or salary. Plaintiff, of course, never received a "poor performance evaluation," and her successful rating of two is the rating which appears in her personnel file. Plaintiff's claim, insofar as it relates to the receipt of a "non-monetary incentive" award rather than a "monetary performance" award, similarly fails to establish conduct on the part of the defendant rising to the level of an adverse employment action. The testimony clearly establishes that awards made to employees in the Water Control Section and the other sections under the supervision of Jerry Webb were wholly discretionary, and plaintiff has presented nothing which would contradict that testimony. As the Court pointed out in Schamann v. O'Keefe, 314 F.Supp.2d 515, 531 (D. Md. 2004), "[a]s a matter of law ... the non-receipt of a discretionary bonus does not constitute an adverse employment action."[8] Finally, plaintiff contends

---

[7] While, as the Court pointed out in VonGuten, id. at 864, the "practical differences" between the two standards are sometimes "difficult to discern," it is the "terms, conditions or benefits" standard and not the "ultimate employment decision" standard which is applied in determining whether an adverse employment action has been taken by an employer. VonGuten's standard no longer applies to claims of retaliation; however, it remains authoritative in evaluating substantive claims of discrimination under §2000e-16.

[8] See also, Rabinovitch v. Pena, 89 F.3d 482, 488-89 (7th Cir. 1996)(Loss of bonus not an adverse employment action when employee not "automatically entitled to the bonus.")

that defendant discriminated against her by withholding work from her coming into the Water Control Section from Ohio University, work she refers to as "higher graded work" and work for which she had received a letter of appreciation from the university listed as an accomplishment on her 1998-1999 evaluation form. The evidence establishes that plaintiff had and continued to receive most data requests[9] submitted to the Water Control Section.[10] As the Court pointed out in Brockman v. Snow, No. 06-1004, 217 Fed.Appx. 201, *206 (4th Cir. February 13, 2007)(unpublished), "giving an employee less preferable work assignments ... is not enough for an adverse employment action." The fact that plaintiff might no longer be assigned work from this single source, work considered lower graded work, clearly does not rise to the level of an adverse employment action. More importantly than the characterization of the effect of withholding this work assignment, however, is the fact that the record is devoid of evidence to support the claim. There is only plaintiff's unsupported allegation, and in her testimony she concedes her belief that requests from Ohio University were referred to others is simply an assumption.

In her motion for summary judgment, plaintiff asserts that she was subjected to "[r]eprisal and retaliation[11] for protected activity (association/participating with a racially oriented group, i.e., the Black Employment Program Committee ("BEP"))." In asserting this claim, she relies principally on the memorandum written by Jerry Webb in response to her request for reconsideration of her performance rating and what she perceives to be negative references to her service on the

---

[9] Such requests appear to involve questions concerning stream and river levels.

[10] Contrary to plaintiff's assertion, the evidence also indicates that such requests were generally referred to lower graded employees.

[11] While §2000e-16 does not "explicitly" provide a cause of action for retaliation, one has been implied by the courts. Baqir v. Principi, 434 F.3d 733, 747 n. 16 (4th Cir. 2006).

Black Employment Program Committee. While plaintiff is white, her claim is based on the contention that defendant retaliated against her because of her association with a protected class. Under the provisions of 2000e-3 employers, including, as noted, federal employers, are prohibited from retaliating against an employee because of the employee's opposition to "any practice made an unlawful employment practice" or because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing... ." Plaintiff's claim presumably involves the former prohibition, i.e., the prohibition against retaliation because of opposition to unlawful employment practices.[12] The difficulty with this claim, however, stems from the total absence of any evidence in the record before the Court concerning either the activities of the Black Employment Program Committee or plaintiff's activities as a member of that committee. As Johnson v. University of Cincinnati, supra, holds, advocacy on behalf of a member of a protected class or on behalf of a protected class gives standing to a party asserting association discrimination and retaliation whether or not that party is a member of a protected class. The activities of the Black Employment Program Committee, whether the committee was engaged in any oppositional activity, plaintiff's activities as a member of the committee and the relationship between the committee and defendant are, however, purely matters of speculation. There is no evidence concerning such matters in the record, and the absence of any basis for believing that the committee or plaintiff acted in some manner as an advocate for a protected class doubts on her standing to assert a retaliation claim based on membership in the Black Employment Program Committee.[13]

---

[12] See generally, Johnson v. University of Cincinnati, 215 F.3d 561 (6th Cir. 2000).

[13] See, Rasekh v. Veneman, 357 F.Supp.2d 70, 76 (D. D.C. 2004)(participation in an organization formed to address "ceiling problems" facing Asians in the Food Safety and

Even if standing is assumed, however, the Court concludes that the evidence fails to establish any basis for plaintiff's retaliation claims. The Court's decision in Burlington Northern & Santa Fe Railway Co. v. White, ___ U.S. ____, 126 S.Ct. 2405, 2409 (2006), establishes that the prohibition against retaliation found in §2000e-3(a) extends beyond "actions and harms ... related to employment or occur[ing] at the workplace" and covers "employer actions that would have been materially adverse to a reasonable employee or job applicant." Materially adverse in the context of the anti-retaliation provision means that the employer's conduct "'well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination,"'" id. at 2415, or, in the context of plaintiff's claim based on membership in the Black Employment Program Committee, opposing practices made unlawful under Title VII. Insofar as plaintiff's retaliation claim is based on Jerry Webb's memorandum, it seems clear to the Court that no reasonable employee would be dissuaded from opposing unlawful practices by reason of the memorandum. By means of the memorandum, Mr. Webb explained to the plaintiff that the categories evaluated pertained to performance of her assigned tasks, not to activities engaged in outside of her job description, though such activities might enhance her "personal experience." By the same memorandum, of course, he raised her performance rating to a two. As explained in the testimony of Mr. Webb at the fact-finding conference, it is clear that his intent was to explain the basis for the ratings given in the evaluation, not to reflect negatively on activities of the Black Employment Program Committee or plaintiff's membership on that committee. That plaintiff may believe otherwise simply does not alter the fact that, viewed in the light of the "reasonable employee," an employee simply would not

Inspection Service of the United States Department of Agriculture did not constitute "oppositional activity under Title VII" where the evidence suggested a relationship between the group and the agency was a positive and supportive one).

be dissuaded from opposing unlawful employment practices or making or supporting charges of discrimination as a consequence of the receipt of this memorandum.

Beyond plaintiff's claim of retaliation based on her association with the Black Employment Program Committee, she appears to claim retaliation for filing the administrative complaint on which the present action is based. Retaliation in this instance is alleged to have taken the form of withholding work from Ohio University. As previously, noted, however, there is simply no evidence, beyond plaintiff's conclusory allegations, that such work was withheld. To the extent that plaintiff asserts retaliation in the form of a lowered performance level, the transitory nature of that action and the fact that her rating was raised on her request for reconsideration, makes plain that a "reasonable employee" would not, under the circumstances, be dissuaded from pursuing or supporting a charge of discrimination or from opposing activities made unlawful by Title VII by reason of such lowered rating. Finally, to the extent that plaintiff asserts retaliation based on her failure to receive an "equitable award (non-monetary incentive compared to monetary performance)," the evidence establishes that the monetary value of her award, $207.68, was just over forty dollars less than the individual she has indicated was in a position and had a rating comparable to hers. This difference simply cannot be considered material or of sufficient significance to be considered capable of dissuading the "reasonable employee" from acting.

## RECOMMENDATION

In accordance with the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for summary judgment be denied, that defendants' renewed motion for summary judgment be granted and that this action be dismissed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to plaintiff and all counsel of record.

DATED: July 5, 2007

MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE